```
     M21BBERC
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   UNITED STATES OF AMERICA,
 4              v.                              21 Cr. 458   (CM)
 5   FILIPPO BERNARDINI,
 6
 7                  Defendant.
 8                                              Conference
     ------------------------------x
 9
                                                New York, N.Y.
10                                              February 1, 2022
                                                2:00 p.m.
11
12   Before:
13
                     HON. COLLEEN MCMAHON,
14
                                         Chief Judge
15
                           APPEARANCES
16
     DAMIAN WILLIAMS
17        United States Attorney for the
          Southern District of New York
18   BY:  DANIEL G. NESSIM
          Assistant United States Attorney
19
     DAVID E. PATTON
20        Federal Defenders of New York, Inc.
          Attorneys for Defendant
21   BY:  HANNAH McCREA
          JENNIFER L. BROWN
22        Assistant Federal Defenders
23
24
25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

M21BBERC

        (Case called)

        MR. NESSIM:  Good afternoon, your Honor.

        Daniel Nessim for the government.

        THE COURT:  Good afternoon.

        MS. MCCREA:  Good afternoon, your Honor.

        Hannah McCrea with Federal Defenders on behalf of Mr. Bernardini.

        THE COURT:  Hello, Ms. McCrea.  Have a seat.

        Mr. Nessim, I won't pretend that I haven't read something about this case in the newspaper, but why don't you tell me a little bit about it.

        MR. NESSIM:  Yes, your Honor.

        For at least five years the defendant engineered a scheme to impersonate real people involved in the publishing industry.  He did this by creating more than a 150 lookalike domains and then registering individual email accounts that impersonated those real people.  He used those accounts to fraudulently obtain prepublication manuscripts of forthcoming books, book notes and other written material related to forthcoming books.

        And over the course of this scheme, he impersonated hundreds of people and successfully obtained hundreds of manuscripts and attempted to obtain a similar number of manuscripts that he was unsuccessful in ultimately obtaining.

        THE COURT:  What exactly did he do?  I mean, I know

M21BBERC

what people do when they get pirate copies of movies.  They make more pirate copies of movies and they make them available on the internet.  What did he do with these manuscripts that he obtained?

    MR. NESSIM:  At this point, we're not aware of any remarketing or sale of the stolen manuscripts.  We're still investigating a number of things in this case.  We've seized a number of devices from the defendant incident to his arrest which we're attempting to search.

    THE COURT:  Okay.  He wanted to read books before they were published.  All right.  Interesting, very interesting.

    So what's the status of the discovery?

    MR. NESSIM:  The government's made two discovery productions.  The first on January 20th, the second on January 25th, that included subpoena returns, search warrant returns, search warrant affidavits and warrants and other items.  We anticipate one more discovery production for additional Rule 16 items in our possession.  We expect that production to be made within the next two weeks.

    Once that production is made, our current Rule 16 obligations we believe will be complete, although we do anticipate rolling productions for devices we do not yet have assess to and subpoena returns and potentially Mutual Legal Assistance Treaty requests, which we do not yet have in our possession.

M21BBERC

1    THE COURT:  So let's talk about devices.  You have or
2    within two weeks will turn over the contents of some devices?
3             MR. NESSIM:  We seized a Kindle, a laptop, an I-pad
4    and a cellular phone from the defendant when he was arrested.
5    We've only accessed the Kindle at this time, so we'll produce
6    the image of that device.  The others we are attempting to
7    access.  We don't have an anticipated timeline on when or
8    whether we'll be able to access those.
9             THE COURT:  Okay. But the contents of the Kindle have
10   been made available?
11            MR. NESSIM:  Not yet.  That's in the next production.
12            THE COURT:  In the next production.  Okay.  And then
13   you're trying to get stuff with an MLAT?
14            MR. NESSIM:  Yes, your Honor.
15            THE COURT:  What?
16            MR. NESSIM:  The equivalent of what would be subpoena
17   return of the United States from the U.K. where Mr. Bernardini
18   resided before his arrest.  That's the primary Rule 16 material
19   we expect to get from an MLAT.
20            THE COURT:  Thank you.  Okay.  And I know you can't
21   really estimate what the timetable is on that.  Fine.
22            Anything else from the government?
23            MR. NESSIM:  No, your Honor.  Just that from talking
24   to defense counsel, I understand they would like 60 days for a
25   conference.

M21BBERC

1           THE COURT:  Well, let's talk to Ms. McCrea.  Hello.
2   How are you, Ms. McCrea.
3           MS. MCCREA:  Hello.  How are you, your Honor?
4           THE COURT:  I'm fine.  What's up?
5           MS. MCCREA:  Your Honor, that's generally all correct.
6   We did receive two productions.  I would just note they're
7   both, particularly the second one, quite voluminous.  We are
8   still working our way through that.  As the government
9   represented, I understand there's more coming.
10          So in light of the fact that we're still relatively
11  early in obtaining and reviewing discovery, we would ask to put
12  this over for 60 days.
13          THE COURT:  Okay.  Well, I don't have any problem with
14  that.  Mr. O'Neil would like to know why you handed up an
15  updated financial affidavit.  I don't know anything about
16  Mr. Bernardini, but I hadn't expected to see Federal Defenders
17  here today, so.
18          MS. MCCREA:  I understand.  Your Honor,
19  Mr. Bernardini's financial status changed slightly since we
20  were at the presentment, and I know we have an ongoing
21  obligation to update the Court regarding his financial
22  circumstances.
23          I can just speak briefly to the two main substantive
24  changes.  At the time Mr. Bernardini was presented, we had been
25  informed he had been suspended from his job.  That is still the

M21BBERC

case, however, we were informed after the presentment that he is least for the moment going to continue to receive his pay while they conduct their own investigation.

It's unclear how long that will take. How much longer he will be receiving his pay, but I wanted to represent that faithfully to the Court since we previously understood him to be unemployed.

And similarly as I believe the Court is aware, he is on bail under pretty strict conditions here in New York City. He's been obligated to obtain an apartment, so there's now been a substantial increase in his expenses. I believe pretrial and the government are pretty well-aware that he obtained an apartment in the city in order to remain in New York for this case. It's a temporary apartment.

THE COURT: Okay. All right. Fine. Sixty days is fine with me.

Mr. O'Neil, that would be April.

DEPUTY CLERK: First week of April, April the 5th at two o'clock. April 5th or 6th, whichever is better.

THE COURT: The 5th is fine. Time is excluded in the interest of justice. The defendant's interest in a speedy trial being outweighed by the request of his counsel to have additional time to review government's discovery, which is apparently voluminous and has not all been provided yet, and that will quite suffice.

M21BBERC

1              So, April 5th at two o'clock.
2              Thank you, everyone.  See you then.
3              (Adjourned)